UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUAN BALDERAS,

                Plaintiff,

v.                                                       Case No. 22-cv-1098-pp

ROLANDO GONZALEZ
and MILWAUKEE POLICE DEPARTMENT,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Juan Balderas, who is incarcerated at the Racine Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights by arresting him without a warrant. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 11, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $19.84. Dkt. No. 8. The court received that fee on October 24, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has sued Rolando Gonzalez and the Milwaukee Police Department. Dkt. No. 1 at 1. He alleges that on July 23, 2019, Gonzalez arrested him without a warrant in front of his children, neighbors and co-workers on a complaint of sexual assault. Id. at 2. The plaintiff alleges that the sexual assault allegations were false and that the district attorney instructed Gonzalez not to arrest him. Id. at 3. The plaintiff asserts that he was booked, and the arrest is now recorded with child welfare, the district attorney's office,

a hospital, the Wisconsin State Crime Laboratory and "the sensitive crimes file;" the plaintiff also says that the crime "was made public and could be in private hand." Id. at 2. He says that because he was arrested and released on July 23, 2019, he did not know the arrest was on his record. Id. at 3. He alleges that the investigation ended on December 20, 2019. Id. For relief, the plaintiff seeks $700,000 and that Gonzalez be reprimanded and re-trained. Id. at 4.

The last four pages of the plaintiff's complaint contain two more complaints (handwritten, but not on the court's official form) making nearly identical allegations against two other officers who, along with Gonzalez, arrested the plaintiff on July 23, 2019: David Cabral and Anthony Martinez. Id. at 6-9. As best the court can tell, it appears that the plaintiff wants to sue Gonzalez, Cabral and Martinez for arresting him (though it is not clear why he did not simply name all three individual defendants in the form complaint).

The plaintiff included police investigation documents that describe the events leading up to the plaintiff's arrest. Dkt. No. 1-1. These documents explain that on July 7, 2019, a minor alleged that the plaintiff touched her in her vaginal area and that, following an investigation, Assistant District Attorney (ADA) Owen Piotrowski decided to not process the case. Id. at 2, 6. On July 11, 2019, ADA Piotrowski told Officer Christine Rutherford that the "Temp Felony Want" for the plaintiff should not remain in the "system" and it was removed that day. Id. at 6. Gonzalez's report from the plaintiff's July 23, 2019 arrest states:

4

> On Tuesday, July 23rd, 2019, at approximately 4:15 PM, squad 2433 (myself) and squad 2437 (P.O. David CABRAL and P.O. Anthony MARTINEZ) observed a known wanted subject standing outside of the address of 1331 W. Harrison St, located in the City and County of Milwaukee. The known subject was previously identified as Juan A BALDERAS (M/W, 11-01-1977). BALDERAS was taken into custody at this address without incident for this suspect alert. BALDERAS was then conveyed to district #2 for processing.

Id. at 3.

C. Analysis

The plaintiff cannot pursue a §1983 claim against the Milwaukee Police Department, because it is not subject to suit under §1983. State law determines the capacity of an entity to sue or be sued. Federal Rule of Civil Procedure 17(b). Wisconsin Statute §62.50 governs the City of Milwaukee's police department, and it does not authorize the police department to sue or be sued. See Grow v. City of Milwaukee, 84 F. Supp. 2d 990 (E.D. Wis. 2000) (abrogated on other grounds by Driebel v. City of Milwaukee, 298 F.3d 622 (7th Cir. 2002)). Further, because the police department is an agency of the City of Milwaukee, it cannot be sued separate from the city. See Averhart v. City of Chicago, 114 F. App'x 246, 247 (7th Cir. 2004). The court will dismiss the Milwaukee Police Department as a defendant.

The plaintiff's allegations against Gonzalez—that Gonzalez arrested him without a warrant—implicate his rights under the Fourth Amendment. See Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009).

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. See

5

> *Payton v. New York*, 445 U.S. 573, 585 . . . (1980). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 354 . . . (2001).
>
> To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 . . . (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 . . . (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371 . . ., it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U.S. 213 232 . . . (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, at 243-244, n.13 . . . (1983). Probable cause "is not a high bar." *Kaley v. United States*, 517 U.S.----, ----, 134 S. Ct. 1090, 1103 . . . (2014).

District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 585-86 (2018).

The documents the plaintiff filed with his complaint indicate that on July 7, 2019, the victim had alleged that the plaintiff had touched her in her vaginal area. Dkt. No. 1-1 at 2. Officer Christine Rutherford reported that three days later, on July 10, 2019, she appeared at the district attorney's office, but the victim did not appear. Id. at 6. District Attorney Owen Piotrowski reviewed the case and, on July 10, said he would "pend" it. Id. Rutherford returned to the DA's office the next day—July 11, 2019—and at that time, ADA Piotrowski told her that with no disclosure from the victim he would be "no processing" the case. Id. Rutherford advised ADA Piotrowski that she had "entered a Temp Felony Want" in the system, and asked if it should remain in the system; ADA Piotrowski responded that it should not remain in the system. Id. Rutherford

6

stated in her report that she removed the temp felony want and removed the "suspect alert." Id.

The reports indicate, however, that on July 23, 2019—almost two weeks after Rutherford indicated she had removed the temp felony want and the suspect alert from the system—Gonzalez wrote in his report that he, Cabral and Martinez saw "a known wanted subject standing outside of the address of 1331 W Harrison St" in Milwaukee at about 4:15 p.m. Id. at 3. Gonzalez indicated that the subject previously had been identified as the plaintiff and that he was taken into custody "for this suspect alert" and conveyed to District #2 for processing. Id. Detective Andrew Marx reported that a sergeant instructed him to interview the plaintiff "who has a Suspect Alert for 1st Degree Sexual Assault of a Child." Id. at 5. Marx reported, "This case was reviewed by ADA Owen Piotrowski on July 11, 2019, and the case was no processed." Id. Marx reported that the plaintiff was escorted to an interview room, where—before he'd received his Miranda warnings—the plaintiff stated that he had not touched the victim. Id. Marx advised the plaintiff not to make a statement until Marx had read him his rights; after Marx read the plaintiff his rights, the plaintiff said he did not wish to speak without an attorney and was escorted back to his cell. Id. Marx wrote that at that point, a lieutenant advised him that the plaintiff could be administratively released. Id.

Finally, Detective Jolene Del Moral wrote that on December 20, 2019—five months later—she received an email from the Milwaukee Police Department-Evidence Analysis Unit that contained a copy of a confidential

7

report of laboratory findings for the investigation, and that she put the report in the "Sensitive Crimes Division file." Id. at 7.

It is possible that Gonzalez had probable cause to arrest the plaintiff on July 23. The above facts imply that Rutherford may not have taken the felony want/suspect alert out of the system (or that she believed she did, but somehow the want/alert was not removed), and that when Gonzalez arrested the plaintiff, he believed he was doing so subject to a valid suspect alert. But at this early stage, there is no way to tell, and the records indicate that as of July 11, 2019, there should no longer have been a want, alert or any other kind of notice out for the plaintiff. At the screening stage, the court concludes that the plaintiff has asserted sufficient facts to allow him to proceed on a claim that Gonzalez arrested him without a warrant and without probable cause.

As for Cabral and Martinez, however, if the plaintiff wanted to sue them, he should have named them in the same complaint with Gonzalez. Because the plaintiff did not sue Cabral and Martinez in the main complaint, the court will not screen his allegations against them and takes no position on whether he has stated a claim against them.[1]

---

[1] If the plaintiff wants to sue all three defendants—Gonzalez, Cabral and Martinez—he must file a single, amended complaint naming all three officers in the caption and describing what each officer did in the "Statement of Claim" section on page 2. An amended complaint must be complete in itself; it cannot refer the court back to the original complaint. The plaintiff is not required to file an amended complaint. He may proceed only against Gonzalez. If so, he doesn't need to do anything. The court will require Gonzalez to respond to the original complaint and once he does so, the case will proceed. In case the plaintiff *does* want to file an amended complaint naming all three officers as defendants, the court has included an amended complaint form with this order.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendant Milwaukee Police Department.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Rolando Gonzalez under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Gonzalez to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$330.16** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number.

If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Racine Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 4th day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**