UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JUAN BALDERAS,

                        Plaintiff,

  v.                                              Case No. 22-cv-1098-pp

ROLANDO GONZALEZ, DAVID CARBRAL,
ANTONY MARTINEZ, CHRISTINE RUTHERFORD,
JOLENE DEL MORAL, CITY OF MILWAUKEE,
STATE OF WISCONSIN, ANITA CLARK
and ST. FRANCIS HOSPITAL,

                        Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 12), DENYING AS MOOT DEFENDANT GONZALEZ'S MOTION TO DISMISS (DKT. NO. 17), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 21) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 31)**

---

      Plaintiff Juan Balderas, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983. The court screened the complaint and allowed the plaintiff to proceed on a claim against City of Milwaukee Police Officer Rolando Gonzalez based on allegations that Gonzalez arrested him without a warrant and without probable cause in violation of the Fourth Amendment.[1] Dkt. No. 9 at 8. On January 12, 2023, the court received from the plaintiff an amended complaint. Dkt. No. 12.

---

[1] The original complaint included allegations against two other City of Milwaukee police officers, David Carbral and Anthony Martinez, but did not name these individuals as defendants. Dkt. No. 1 at 6-9. At screening, the court advised the plaintiff that he should file an amended complaint if he wanted the court to consider his allegations against Carbral and Martinez. Dkt. No. 9 at 8 n.1.

On March 3, 2023—after the plaintiff had filed his amended complaint but before the court had screened the amended complaint—defendant Gonzalez filed a motion to dismiss the *original* complaint, asserting that the claims in it were barred by the statute of limitations. Dkt. No. 17. Since then, the court has received from the plaintiff a motion to appoint counsel and a motion for an extension to time to file his response and sur-reply to defendant Gonzalez's motion to dismiss the complaint. Dkt. Nos. 21, 31. This order screens the amended complaint, denies as moot Gonzalez's motion to dismiss the original complaint, denies without prejudice the plaintiff's motion to appoint counsel and denies as moot his motion for extension of time.

**I.    Screening the Amended Complaint (Dkt. No. 12)**

   A.    Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison,

668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued City of Milwaukee Police Officers Rolando Gonzalez, David Carbral, Antony Martinez, Christine Rutherford and Jolene Del Moral; the City of Milwaukee; the State of Wisconsin; Anita Clark; and St. Francis Hospital. Dkt. No. 12 at 1-2.

3

The plaintiff alleges that on July 7, 2019, Anita Clark lied to hospital staff and police officials when she told them he touched his niece, which caused the police to respond. Id. at 2. The plaintiff alleges that Clark attempted to coach his niece to lie. Id. at 3. He states that St. Francis Hospital gave Detective Del Moral "unmerited info" and that Del Moral "acted on her emotions and/or lied for her benefit," asserting that "[i]ronic[a]lly and only off camera, to her [Del Moral] is the only time when [the plaintiff's niece] is stated to have said the words, 'he touched me there' while pointing to her groin area . . . and 'I think inside.'" Id. at 3. The plaintiff asks why, if his niece said this, Del Moral did not go to the District Attorney with "Rutheford" and insist on charges; instead, he says, his niece left Milwaukee sixteen days later. Id.

The plaintiff alleges that on July 11, 2019—four days after Clark allegedly lied—Assistant District Attorney Piotrowski told Officer Rutherford to remove the plaintiff's warrant and that it was only a "temp warrant." Id. at 2-3. The plaintiff references this court's order screening the original complaint, in which the court said that it appeared that Rutherford neglectfully failed to communicate to the "system" and to leading case officials that there was not a warrant that merited an arrest. Id. at 3. The plaintiff says that, as this court recognized, further discovery is necessary to know if Rutherford communicated the plaintiff's wanted status diligently or if officers had a legal warrant at all. Id. The plaintiff says that if the allegations aren't true, he will concede to her and others. Id. He says that the City of Milwaukee and State of Wisconsin do not regulate "temp warrants[.]" Id. at 3.

4

The plaintiff alleges that on July 23, 2019, Gonzalez, Carbral and Martinez arrested him for something that he did not do and for something that had been "no processed" by the District Attorney's Office on July 11. Id. at 2. The plaintiff alleges that the arrest information is now in "public, private and government hands." Id. at 2.

The plaintiff seeks $700,000 from each defendant and injunctive relief (such as requiring the sensitive crimes unit to video the statements of child victims, removing Del Moral from her assigned unit, retraining officers on communication of "temp warrants" and compelling them to respond appropriately to such warrants and placing a lifetime restraining order on Anita Clark). Id. at 4.

C. Analysis

The amended complaint alleges that Gonzalez, Carbral and Martinez unlawfully arrested the plaintiff without a warrant (because, he alleges, the warrant had been "no processed" by the District Attorney's Office prior to his arrest). The Fourth Amendment prohibits "unreasonable" searches and seizures, and '[i]t is a "'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.""' Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004)). The amended complaint does not say where the plaintiff was when Gonzalez, Carbral and Martinez arrested him. But the court infers that the plaintiff is alleging that, regardless of where the arrest took place, Gonzalez, Carbral and Martinez did not have a

5

valid warrant and did not have probable cause. In other words, the plaintiff is alleging that the three law enforcement officers falsely arrested him in violation of the Fourth Amendment.

> To prevail on a Fourth Amendment claim for false arrest, [a plaintiff] must establish that [he] was arrested without probable cause. *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022). "Probable cause for an arrest provides an absolute defense to a false arrest claim." *Id.* (citing *Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021)). And "[p]robable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted). The inquiry is "purely objective," and "the officer's subjective state of mind and beliefs are irrelevant." *Id.* "Moreover, the court's inquiry is limited to what the officer knew at the time of the arrest and not what has been gained from hindsight." *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012) (citation omitted). This knowledge is assessed from the perspective of an objectively reasonable police officer. *Abbott*, 705 F.3d at 714 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 . . . (2003)).

<u>Johnson v. Myers</u>, 53 F.4th 1063, 1068 (7th Cir. 2022).

It is possible that, at the time they arrested the plaintiff, Gonzalez, Carbral and Martinez were not aware that the arrest warrant had been "no processed." But at the pleading stage, the court construes the plaintiff's allegations liberally. The plaintiff has claimed that Gonzalez, Carbral and Martinez had neither a valid warrant nor probable cause to arrest him. This is enough, at this early stage in the proceeding, to allow the plaintiff to proceed on a Fourth Amendment false arrest claim against Gonzalez, Carbral and Martinez.

6

The plaintiff has alleged facts to state a negligence claim under Wisconsin state law against Rutherford based on allegations that she did not communicate to the "system" that there no longer was a valid warrant supporting an arrest. See Bauer v. Armslist, LLC, 572 F. Supp. 3d 641, 668–69 (E.D. Wis. 2021) (setting forth elements of Wisconsin state law negligence claim) (citation omitted). The court will exercise supplemental jurisdiction over this claim. See 28 U.S.C. §1367(a).

In addition to his claim that the officers unlawfully arrested him, the plaintiff claims that the arrest for the sexual assault of his minor niece ended up on his record and that the arrest information is now in "public, private and government hands." Dkt. No. 12 at 2. The court infers that the plaintiff is alleging that his reputation has been damaged by the facts that the arrest and the circumstances surrounding the arrest ended up on his record. But while the court understands and sympathizes with the plaintiff's concerns, "mere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment[.]" Hinkle v. White, 793 F.3d 764, 767 (7th Cir. 2015) (quoting Hojnacki v. Klein-Acosta, 285 F.3d 544, 548 (7th Cir. 2002)).

To succeed on a due process claim based on reputational damage, the plaintiff must satisfy the "stigma plus" test, which requires him to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held. Doe v. Purdue Univ., 928 F.3d 652, 661 (7th Cir. 2019) (citing Mann v. Vogel, 707 F.3d 872, 878 (7th Cir. 2013)). For example, in Paul v. Davis, 424 U.S. 693, 708–12 (1976),

7

the Supreme Court held that the police did not trigger the Due Process Clause by posting flyers falsely asserting that the plaintiff was an active shoplifter because, while the flyers undoubtedly harmed the plaintiff's professional reputation, their posting did not alter his legal status. Likewise, in Hinkle, 793 F.3d at 767, police officers spread word that they were investigating the plaintiff for child molestation, but the gossip did not alter his legal status and although the rumors made it "virtually impossible" for the plaintiff to change to a new job in his chosen field, the lack of a status change—he was not fired from his job as county sheriff—meant that he could not state a due process claim. Id. at 768–70.

In this case, the plaintiff has not alleged an alteration in his legal status based on the events leading up to his arrest. Even if he had, it appears that any injury to the plaintiff's reputation was not based on Del Moral's alleged lies about his niece's comments on July 7, 2019 but, rather, on Rutherford's alleged failure to follow the ADA's directive to "no process" the warrant on July 11, 2019 (or failure to communicate to the "system" that the warrant had been "no processed"). The plaintiff has not stated a due process claim against Del Moral based on his arrest information being in private, public and government hands.

The court will not exercise supplemental jurisdiction over any state law defamation claim the plaintiff may have against Del Moral and Clark. The plaintiff's allegations that Gonzalez, Carbral and Martinez unlawfully arrested him are distinct from his allegations that Del Moral and Clark lied to hospital

8

staff and officers. A state law defamation claim does not arise out of a common nucleus of operative fact as the plaintiff's Fourth Amendment claim against the officers. See 28 U.S.C. §1367(a); Ammerman v. Sween, 54 F.3d 423, 434 (7th Cir. 1995).

The plaintiff alleges that the City of Milwaukee and State of Wisconsin do not regulate "temp warrants[.]" Dkt. No. 12 at 3. The plaintiff may not proceed against the State of Wisconsin; "[t]he State of Wisconsin cannot be sued under 42 U.S.C. § 1983 . . . both because the state is not a 'person' for purposes of that statute, and because a suit against a state for money damages is barred by the Eleventh Amendment." Smith v. United States, 298 F. App'x 510, 511 (7th Cir. 2008) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989); Porco v. Trs. Of Ind. Univ., 453 F.3d 390, 395 (7th Cir. 2006)). And the plaintiff's conclusory allegation that the City of Milwaukee does not regulate "temp warrants" does not state a plausible claim for relief against the City of Milwaukee. See Iqbal, 556 U.S. at 678.

The plaintiff alleges that Anita Clark lied about him improperly touching his niece. The plaintiff does not explain who Anita Clark is, but it does not appear that she works for the state or is a law enforcement officer. Section 1983 protects plaintiffs from violations of their constitutional rights by persons acting "under color" of state law—government officials. Without any proof that Anita Clark is a government official or that she was somehow working "under color" of state law, the court must dismiss her as a defendant.

9

Finally, the plaintiff alleges that St. Francis Hospital gave Del Moral "unmerited info." It is not clear what the plaintiff means by "unmerited info," although the court infers that he means the hospital told Del Moral something that wasn't true. Lying—by itself—does not violate the Constitution, but more to the point, §1983 allows a plaintiff to sue a "person" who violates his constitutional rights "under color" of state law; in other words, it allows him to sue state officials for violation his constitution rights. St. Francis Hospital is not a person, and it is not part of the state government. St. Francis is part of a non-profit, Catholic health system. https://about.ascension.org/about-us?_gl=1*15do8vp*_gcl_au*MTg5OTY4MTM0Ni4xNjkxOTc2NDE3&_ga=2.81621463.1554989741.1691976419-464138267.1691976419. For a corporation to be held liable under §1983, a plaintiff must show that a "municipal (or corporate) policy or custom gave rise to the harm . . . ." Thomas v. Martija, 991 F.3d 763, 773–74 (7th Cir. 2021). The plaintiff has not alleged that either the City of Milwaukee or St. Francis Hospital had a policy or custom of giving untrue information to law enforcement officers. The plaintiff has not stated a claim against St. Francis Hospital.

In sum, the plaintiff may proceed on a Fourth Amendment false arrest claim against Gonzalez, Carbral and Martinez based on allegations that they unlawfully arrested him without a warrant or probable cause, and the court will exercise supplemental jurisdiction over a Wisconsin state law negligence claim based on allegations that Rutherford did not communicate to the

"system" that there was not a warrant that merited an arrest. The court will dismiss all remaining claims and defendants.

## II. Defendant Gonzalez's Motion to Dismiss (Dkt. No. 17) and Plaintiff's Motion for Extension of Time (Dkt. No. 31)

Gonzalez filed a motion to dismiss the original complaint based on the statute of limitations. Dkt. No. 17. The court will deny this motion as moot because the original complaint no longer is the operative complaint.

The court notes that in support of his motion to dismiss the original complaint, Gonzalez contends that the plaintiff's Fourth Amendment claim is time-barred because the plaintiff was arrested on July 23, 2019 but didn't file his complaint until September 21, 2022, almost two months past the applicable three-year limitation period. The plaintiff filed a response and an unauthorized sur-reply[2] in which he explains that he didn't know that his arrest was unlawful until May 12, 2021, and that among his injuries was damage to his reputation resulting from the fact that he was arrested for sexual assault of a minor becoming memorialized on his record. If the plaintiff did not become aware until May 12, 2023 that there was no warrant for his arrest, or probable cause for that arrest, then his claims may not be time-barred. See Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2004) (§1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights

---

[2] The Federal Rules of Civil Procedure and this court's Civil Local Rules allow a motion, a response and a reply; they do not provide for a sur-reply. The court will deny as moot the plaintiff's motion for extension of time to file his sur-reply. Dkt. No. 31.

11

have been violated") (quoting Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir. 1993)). Neither Gonzalez's brief in support of his motion to dismiss nor his reply brief address the issue of a whether the plaintiff's claims may have accrued after his arrest date or whether the limitation period may have been tolled.

### III. Plaintiff's Motion to Appoint Counsel (Dkt. No. 21)

The plaintiff has asked the court to appoint counsel to help him respond to defendant Gonzalez's motion to dismiss and possibly to help him with litigating his case, including discovery requests. Dkt. No. 21. The plaintiff also provided the court with several letters he wrote to lawyers, asking them to help him, some of which were returned to him as undeliverable and some of which elicited negative responses. Dkt. Nos. 21-1, 22-1, 23-1, 26-1, 27-1, 34-1.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case,

12

does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery,

and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

Based on the letters the plaintiff has provided the court, the court concludes that the plaintiff has satisfied the first requirement for recruitment of counsel by making a reasonable attempt to find a lawyer on his own. This order resolves Gonzalez's motion to dismiss, so the plaintiff's primary reason for requesting counsel no longer exists. The plaintiff also says he may need counsel for discovery. The plaintiff's filings demonstrate that he can advocate for himself at this stage of the case. He filed thorough responses to Gonzalez's motion to dismiss, he communicates effectively regarding the facts of his case and this order narrows the scope of the plaintiff's complaint to a couple of straightforward, fact-bound claims. Once the defendants answer the amended complaint, the parties will have the opportunity to engage in discovery. Based on the plaintiff's filings up to this point, the court believes that he can conduct discovery on his own. Previously, the court mailed the plaintiff a guide for unrepresented incarcerated litigants. The court will deny without prejudice the plaintiff's motion to appoint counsel.

### IV. Conclusion

The court **DISMISSES** defendants Del Moral, City of Milwaukee, State of Wisconsin, Anita Clark and St. Francis Hospital.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on defendants Rolando Gonzalez, David Carbral, Antony Martinez and Christine Rutherford under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Gonzalez, Carbral, Martinez and Rutherford to file a responsive pleading to the amended complaint.

The court **DENIES AS MOOT** defendant Gonzalez's motion to dismiss. Dkt. No. 17.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 21.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time. Dkt. No. 31.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 17th day of August, 2023.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**